UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Cornerstone Capital Strategies,
LLC et al</u>

     v.

<u>White Mountain Organic
Growers' Association, LLC et al</u>

Civil No. 25-cv-375-LM-TSM
Opinion No. 2025 DNH 136 P

**O R D E R**

     Plaintiffs Cornerstone Capital Strategies, LLC and Adams Investments, LLC filed this foreclosure action against defendants White Mountain Organic Growers' Association, LLC ("White Mountain") and Catherine Brown more than four years ago in New Hampshire Superior Court. In August 2025, the New Hampshire Supreme Court summarily affirmed the Superior Court's judgment in favor of the plaintiffs. Four days after the Supreme Court denied defendants' motions for reconsideration and to remand the matter to Superior Court for a new trial, defendants removed this action to this court.

     Presently before the court is plaintiffs' motion to remand. <u>See</u> doc. no. 9. Defendants object (doc. no. 20) and also request various other forms of relief (doc. nos. 19, 21, 22, 23). For the following reasons, the motion to remand (doc. no. 9) is granted and defendants' motions (doc. nos. 19, 21, 22, 23) are denied.

**BACKGROUND**

I.    <u>Factual Background</u>

     The Superior Court held a bench trial on April 9, 2024 and subsequently rendered the following findings of fact. On or about March 5, 2015, plaintiffs loaned

$250,000 to White Mountain, evidenced by a promissory note and a loan agreement bearing the same date. The note is secured by a mortgage encumbering certain real property in Errol, New Hampshire ("the property"). The term of the note was for only six months, at which point the entire balance of the principal became due and owing. In addition, the loan agreement prohibits the transfer of the property to a third party without plaintiffs' consent.

Brown was the principal of White Mountain and signed the note, mortgage, and loan agreement in her capacity as sole member of White Mountain. She also personally guaranteed the note, loan agreement, and mortgage. In addition, Brown signed an "Affidavit of Non-Residency" acknowledging and agreeing that the loan was made for commercial and business purposes only, and that she would not be living in the property or otherwise using it for residential purposes.

Immediately after closing, Brown and her spouse, Suzanne Brown, moved into the property and began using it as a summer residence. And, while the balance of the note became due and owing on October 1, 2015, defendants have not made regular payments on the note and have not satisfied the note since it has matured. The last payment was on November 8, 2017.

Plaintiffs have been attempting to foreclose on the mortgage since 2018. However, according to the Superior Court, defendants have "deliberately stalled any finality" to plaintiffs' foreclosure efforts. Doc. no. 9-2 at 5. For example, Brown caused White Mountain to transfer title to the property to herself in violation of the loan agreement. One day after recording the transfer, Brown filed a petition to

enjoin a foreclosure sale of the property. Defendants have also filed four separate bankruptcies since 2018, the last of which the Bankruptcy Court (Harwood, J.) found was filed "in bad faith and as a part of a scheme to delay and hinder the Mortgagees' foreclosure efforts." In re Brown, Bk. No. 21-10610-BAH, doc. no. 46 at 2 (Bankr. D.N.H. Mar. 18, 2022). Indeed, Judge Harwood found that "[t]he record in this case and the prior three cases 'demonstrates an abuse of the bankruptcy process through multiple filings with the sole purpose of frustrating the legitimate efforts of [the Mortgagees] to recover their collateral.'" Id. at 17 (alterations in original) (quoting In re Henderson, 395 B.R. 893, 901 (Bankr. D.S.C. 2008)). In addition, defendants filed multiple unauthorized and frivolous interlocutory appeals with the New Hampshire Supreme Court, and also filed two petitions to enjoin foreclosures, both of which were dismissed. Between 2018 and April 2024, plaintiffs unsuccessfully attempted to foreclose on the property six different times.

II.   Procedural History

Plaintiffs brought the instant case in Superior Court on June 15, 2021. The complaint contains three counts:

- Count I: Breach of contract, alleging that defendants breached the loan agreement, promissory note, and personal guaranty by failing to pay sums due and owing.

- Count II: Unjust enrichment, alleging that defendants have been unjustly enriched by failing to pay amounts due and owing.

- Count III: Fraudulent conveyance in violation of RSA 545-A:1 et seq., alleging that Brown improperly caused White Mountain to transfer the property to herself.

3

The complaint states that plaintiffs are Rhode Island limited liability companies, that White Mountain is a New Hampshire limited liability company, and that Brown is a New Hampshire resident and the sole member of White Mountain. Among other things, the complaint sought damages in the amount of the balance owed on the loan. The complaint alleged that that amount was $411,513.61 as of March 31, 2021.

Defendants did not answer plaintiffs' complaint, and the Superior Court entered a default. The Superior Court thereafter granted defendants' motion for entry of judgment and scheduled a bench trial to determine plaintiffs' damages. The bench trial occurred on April 9, 2024. The Superior Court found and ruled that White Mountain and Brown are jointly and severally liable to plaintiffs in the amount of $453,640.69, and further ruled that plaintiffs may commence foreclosure proceedings on the property.

Defendants thereafter appealed the Superior Court's order to the New Hampshire Supreme Court. On August 27, 2025, the Supreme Court summarily affirmed the Superior Court's order. Defendants moved for reconsideration and also simultaneously moved to stay and remand the proceedings for a new trial. The Supreme Court denied defendants' post-affirmance motions on September 25, 2025.

Four days later, defendants filed a notice of removal of the instant action in this court. The notice states that defendants remove the action "pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1447." Doc. no. 1 at 1-2; accord id. at 4. The notice does not state that removal is pursuant to 28 U.S.C. § 1331.

4

## DISCUSSION

A defendant may remove from state to federal court a civil action over which the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a). Ordinarily, the defendant's notice of removal must be filed within thirty days of the defendant's receipt of the plaintiff's initial pleading. Id. § 1446(b)(1). But "if the case stated by the initial pleading is not removable," the defendant may file a notice of removal within thirty days of receipt "of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Id. § 1446(b)(3); see also New Hampshire v. 3M Co., 665 F. Supp. 3d 215, 229-30 (D.N.H. 2023) ("In practice, the 30-day clock begins if either one of two conditions exists: (1) the case stated by the initial complaint is removable or (2) subsequent papers allow the defendant to ascertain removability."), aff'd, 132 F.4th 556 (1st Cir. 2025).

Here, defendants do not dispute that plaintiffs' initial pleading stated claims over which this court would have had original jurisdiction pursuant to 28 U.S.C. § 1332. See doc. no. 26-1 (complaint). The complaint asserts that plaintiffs are Rhode Island limited liability companies, that White Mountain is a New Hampshire limited liability company, and that Brown is a New Hampshire resident. Moreover, the complaint makes clear that plaintiffs sought damages in excess of $75,000. Thus, plaintiffs' initial pleading "provide[d] the defendant[s] with sufficient

5

information to easily determine that the matter [was] removable,"[1] and the thirty-day clock began running when defendants received that pleading at or around the time of its filing in June 2021. Pazol v. Tough Mudder Inc., 819 F.3d 548, 557 (1st Cir. 2016). "Unless the issue is waived, a case removed after the 30-day clock begins and ends must be remanded." 3M Co., 665 F. Supp. 3d at 230. Defendants' removal, instituted more than four years after they received plaintiffs' complaint, is untimely, and this case must be remanded.

      Defendants disagree. First, defendants request that this court stay consideration of plaintiffs' remand motion to permit defendants to obtain evidence they claim is necessary to show the propriety of removal. See doc. no. 19 (motion to stay ruling). Despite the notice of removal's citations to § 1332 and "the diversity of the parties and [the] amount in controversy," doc. no. 1 at 2-4, defendants contend that the notice of removal's reliance upon § 1332 was a "scrivener's error" and an "unintentional oversight by pro se litigants," and that "[t]he intended and substantive basis for removal . . . is Federal Question jurisdiction under 28 U.S.C. § 1331." Doc. no. 22 at 2 (emphasis omitted) (motion for leave to amend notice of removal). Defendants assert that plaintiffs filed a false criminal complaint against defendants on or about September 20, 2020, but that defendants "were unaware of the specific nature of this suppressed document until September 16, 2025." Doc. no. 23 at 3 (motion to reconsider denial of motion for subpoena). They further assert

---

[1] Indeed, the notice of removal cites § 1332 as grounds for removal and asserts that the case is removable pursuant to "the diversity of the parties and [the] amount in controversy." Doc. no. 1 at 3.

that they need this document to substantiate their assertion that removal was proper under § 1331, that there was no basis for defendants to seek removal until they became aware of the "specific nature" of the alleged complaint in September 2025, and that they should be permitted to amend the notice of removal to rely upon § 1331 rather than § 1332. For several reasons, defendants' arguments fail.

First, their proposed amended notice of removal fails to show the existence of federal question jurisdiction. See doc. no. 22-1 (proposed amended notice). Section 1446(a) requires a notice of removal to "contain[ ] a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." Dart Cherokee Basin Op. Co., LLC v. Owens, 574 U.S. 81, 87 (2014). Thus, a party seeking removal must provide the court with "the facts from which its jurisdiction can be determined," and the same rules governing the sufficiency of a complaint "apply to appraise the sufficiency of a defendant's notice of removal." 14C Mary Kay Kane & A. Benjamin Spencer, Federal Practice & Procedure § 3733 (4th ed.); accord Leite v. Crane Co., 749 F.3d 1117, 1122 (9th Cir. 2014) (explaining that "a defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction"); Charter Sch. of Pine Grove, Inc. v. St. Helena Par. Sch. Bd., 417 F.3d 444, 447 (5th Cir. 2005) (explaining that, because the "[r]ules of notice pleading apply . . . to petitions for removal," the defendant's "notice of removal was sufficient . . . if it provided the district court with facts from which removal jurisdiction . . .

could be determined" (brackets in original) (quoting Brown v. City of Meridian, 356 F.2d 602, 606 (5th Cir. 1966))).

Here, the proposed amended notice of removal alleges that plaintiffs have engaged in "criminal actions" such as "conspiracy obstruction, false reports to law enforcement, and witness intimidation," and that, in so doing, plaintiffs "have weaponized law enforcement and the criminal justice system to affect federal and state proceedings." Doc. no. 22-1 at 3. However, the proposed notice of removal does not provide the court with facts which, if accepted as true, allow the court to draw the reasonable inference that plaintiffs engaged in the sort of conduct alleged. It simply asserts in a "conclusory fashion" that plaintiffs have engaged in criminal actions affecting federal and state proceedings. Pine Grove, 417 F.3d at 448.

But even if defendants had provided facts that permitted the reasonable inference that plaintiffs engaged in "federal crimes . . . by filing a fraudulent criminal complaint to intimidate a party and obstruct federal bankruptcy proceedings," doc. no. 20 at 2, such facts would still be insufficient to show the existence of federal question jurisdiction. "Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004) (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 9-10 (1983)). Under this rule, "the federal question [must] be stated on the face of the plaintiff's well-pleaded complaint." R.I. Fishermen's All., Inc. v. R.I. Dep't of Env't Mgmt., 585 F.3d 42, 48

(1st Cir. 2009). "The existence of a federal defense to a state-law cause of action will not suffice." Id.

Here, plaintiffs brought three claims arising under New Hampshire law in the underlying Superior Court action against defendants. Defendants have provided no evidence to suggest that plaintiffs' claims, , arise under federal law. And, even assuming defendants had plausibly alleged that plaintiffs engaged in federal crimes in obstruction of defendants' bankruptcy proceedings or the underlying state court proceeding, such allegations would at most show a possible defense[2] to plaintiffs' New Hampshire claims. Thus, even if defendants had plausibly alleged that plaintiffs illegally obstructed federal or state proceedings, that would not show the existence of federal question jurisdiction.

Finally, defendants' arguments ignore a critical fact. The thirty-day clock begins running at the time defendants received the plaintiffs' initial pleading so long as "the case stated by the initial pleading is . . . removable." 28 U.S.C. § 1446(b)(3). There is no dispute that the case stated by plaintiffs' initial pleading was removable on the basis of § 1332 because the complaint asserted that the parties' citizenship was diverse and it sought damages in excess of the jurisdictional threshold. See doc. no. 1 at 3. Thus, even assuming defendants did not learn of the existence of facts giving rise to federal question jurisdiction until September 2025,

---

[2] To the extent defendants allege that plaintiffs obstructed the underlying state court proceeding, the court is not even sure such an allegation gives rise to a federal defense. And the court struggles to see why plausible allegations of obstruction of a separate bankruptcy proceeding would give rise to a federal defense in this state law action.

the revelation of those facts "will not revive the [thirty-day] period for removal [because] the state-court case previously was removable." Kane & Spencer, supra § 3731.

For the foregoing reasons, the court concludes that defendants' removal was untimely, that defendants' arguments to the contrary are not persuasive, and that this matter must be remanded to the New Hampshire Supreme Court.

In addition to seeking remand, plaintiffs request an award of attorney fees under 28 U.S.C. § 1447(c). Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Although a court should ordinarily exercise restraint in awarding fees under § 1447(c), it may award fees when "unusual circumstances" exist or when "the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005). Although a finding of bad faith is not necessary to support an award of attorney fees, Net 2 Press, Inc. v. Nat'l Graphic Supply Corp., 324 F. Supp. 2d 15, 19 (D. Me. 2004), it is a relevant consideration in determining whether a fee award is appropriate, see Martin, 546 U.S. at 140 ("The appropriate test for awarding fees under § 1447(c) should recognize [Congress's] desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party . . . .").

The court finds the procedural posture of this case concerning. At least two judges have concluded that defendants have engaged in bad-faith litigation tactics with the goal of frustrating plaintiffs' legitimate efforts to secure their collateral on

a loan that has been in default essentially from the moment it matured. The court is particularly concerned with Judge Harwood's finding that defendants "abuse[d] . . . the bankruptcy process through multiple filings with the sole purpose of frustrating the legitimate efforts of [the Mortgagees] to recover their collateral." From the outset of defendants' removal of this action, the undersigned has been skeptical of the propriety of defendants' conduct in removing this case four years after institution of suit, and only after the Supreme Court affirmed the Superior Court's judgment in favor of plaintiffs. See Endorsed Order of Oct. 30, 2025.

Defendants' attempts to defeat remand have deepened the court's concern that they lacked an objectively reasonable basis to remove at the time they did, and that the instant removal is part of a longstanding pattern of defendants' abuse of the judicial process to frustrate plaintiffs' legitimate foreclosure efforts. For example, defendants' attempts to amend the notice of removal to allege the existence of federal question jurisdiction are premised upon their assertion that the original notice's reliance upon diversity jurisdiction was a mere "scrivener's error." Doc. no. 22 at 2. In essence, defendants contend, the notice mistakenly cites to § 1332, when in reality plaintiffs intended to rely upon § 1331. The characterization of the original notice's reliance upon § 1332 as a mere "scrivener's" or "clerical" error—i.e., a typo—deliberately overlooks that the notice of removal <u>substantively relies upon</u> "the diversity of the parties and [the] amount in controversy" as grounds for removal. Doc. no. 1 at 3.

Moreover, in arguing that their removal was timely, defendants claim that they only became aware of the "specific nature" of the alleged criminal complaint on September 16, 2025. Doc. no. 23 at 3. However, in their brief submitted to the New Hampshire Supreme Court in February 2025, defendants asserted that plaintiffs "filed a criminal complaint with the New Hampshire State Police" in September 2020 that "falsely allege[d]" Brown committed the offense of "fraudulent transfer." Doc. no. 24-1 at 13. Defendants further alleged in their February 2025 brief that this September 2020 criminal complaint resulted in charges that were "still-pending . . . and an open warrant against" Brown, which defendants "continue to settle with the New Hampshire State Police, Coos County Attorney's Office, and the New Hampshire Public Defender's Office." Id. Defendants' representations before this court that they were unaware of the "specific nature" of this criminal complaint until September 2025 are belied by their representations to the New Hampshire Supreme Court mere months earlier.

While defendants are pro se,[3] and the court is ordinarily more forgiving of pro se litigants' lack of familiarity with court procedure, the court simply cannot ignore that the timing of this removal, and defendants' post-removal justifications for it, are consistent with what at least two judges have characterized as bad-faith

---

[3] No counsel has entered an appearance for defendant White Mountain. This is despite the fact that White Mountain, as a corporation, may not represent itself, and this court has ordered White Mountain to secure counsel. LR 83.6(c); Order of Oct. 3, 2025.

12

litigation tactics intended to forestall plaintiffs' legitimate efforts to foreclose on a mortgage that has been in default for nearly a decade.

For these reasons, the court will order defendants to submit a filing within fourteen (14) days of the date at the bottom of this order showing cause why the court should not order an award of attorney fees.[4] Plaintiffs may file a response within seven (7) days of the docketing of defendants' filing. Plaintiffs' response shall state the amount of fees sought and provide an itemized breakdown supporting the claimed fee amount.

## CONCLUSION

For the foregoing reasons, the court orders as follows:

- Plaintiffs' motion to remand (doc. no. 9) is granted.

- Defendants' motion to amend the notice of removal (doc. no. 22) is denied as futile.

- Defendants' motion for reconsideration of the court's denial of their motion for a subpoena (doc. no. 23) is denied because the materials sought are irrelevant to the timeliness of removal for the reasons set forth herein and because defendants have failed to show that the court's endorsed order of November 12, 2025 is based on a manifest error of law or fact. LR 7.2(d).

- Defendants' "motion to drop nominal co-defendant White Mountain Organic Growers' Association LLC and vacate order requiring counsel" (doc. no. 21) is denied as moot.

---

[4] This court retains jurisdiction to enter an award of fees even after the case is remanded. Seacoast Motorcycles, Inc. v. Town of N. Hampton, Civ. No. 10-cv-532-LM, 2011 WL 462710, at *4 (D.N.H. Feb. 4, 2011); see also Bryant v. J.D. Britt, 420 F.3d 161, 165 (2d Cir. 2005) ("All of the other circuits that have addressed the question have reached the same conclusion.").

- Defendants' motion to stay (doc. no. 19) is denied because the materials sought are irrelevant to the timeliness of removal for the reasons set forth herein.

- Defendants shall submit a filing within 14 days from the date at the bottom of this order showing cause why the court should not order an award of attorney fees. Plaintiffs may file a response within 7 days of the docketing of defendants' filing. Plaintiffs' response shall state the amount of fees sought and provide an itemized breakdown supporting the fee amount sought.

- This matter is remanded to the New Hampshire Supreme Court. The clerk is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 25, 2025

cc:    Counsel of Record